UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KURT J. KEMP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-01855-JPH-TAB |
| | ) |
| A. PLATZ, et al. | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Kurt Kemp is an inmate of the Indiana Department of Correction ("IDOC"). He has chronic back pain, caused by spinal stenosis, and a history of transient ischemic attacks, which are also known as "mini strokes." Mr. Kemp alleges the defendants provided him with inadequate treatment for these conditions in violation of the Eighth Amendment. He specifically alleges that he did not receive thorough examinations, was not prescribed effective pain medication, did not receive over-the-counter medication for 50 days, and was denied a bottom bunk pass.

The defendants have moved for summary judgment, arguing that they provided treatment consistent with their professional judgment. They further argue that there is no evidence they personally deprived Mr. Kemp of over-the-counter medication. For the reasons explained below, the defendants' motions for summary judgment are **granted**.

**I.
SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific

portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II.
## FACTUAL BACKGROUND

### A. The Parties

Mr. Kemp is an inmate of IDOC. Dkt. 101-3, p. 3. In August 2017, he was transferred to New Castle Correctional Facility ("NCCF") and remained there during the time period relevant to the complaint. *Id.*

Dr. Platz is a physician licensed to practice medicine in Indiana. Dkt. 105-2, para. 2. He is board certified in general practice and has been in practice in the United States since 1980. *Id.* He worked at NCCF as an independent contractor from October 2017 until September 2018. *Id.* at para. 3.

Wexford of Indiana, LLC ("Wexford") is a corporation that provides healthcare services to inmates at NCCF and other IDOC correctional facilities. Dkt. 101-1, para. 2; dkt. 101-2, para. 2.

Dr. Bruce Ippel is a physician licensed to practice medicine in the state of Indiana. Dkt. 101-2, para. 1. During the time period relevant to the complaint, Dr. Ippel was employed by Wexford at NCCF. *Id.* at para. 2.

Nurse Penelope Wadleigh is a mental health nurse practitioner Dkt. 101-1, para. 2. She was employed by Wexford at NCCF from April 1, 2017, until April 6, 2018. *Id.* at 2.

### B. Mr. Kemp's Medical History and Treatment at NCCF

Sometime between 2013 and 2014, Mr. Kemp suffered a transient ischemic attack ("TIA").[1] Dkt. 101-3, p. 10. Since that time, he has suffered a TIA once every few years. *Id.* at 13. His last TIA occurred during his incarceration at Wells County Jail before his transfer to IDOC. *Id.* at 7. He takes aspirin as a preventative measure against future blood clots. *Id.* at 5.

---

[1] TIAs are sometimes referred to as "mini strokes." They are often caused by a blood clot that temporarily restricts blood flow to the brain. *See* https://www.cdc.gov/stroke/types_of_stroke.htm#transient.

3

Prior to his incarceration, on April 21, 2016, Mr. Kemp arrived at Bluffton Regional Medical Center's Emergency Department with complaints of left shoulder pain and tingling sensations in his fingers. Dkt. 111-1, p. 22. He was diagnosed with spinal stenosis and compression of his vertebrae. *Id.* Although he was referred for a consultation with a neurosurgeon, he was arrested two or three months before the appointment, and surgery was never recommended or scheduled. Dkt. 101-3, pp. 18-19.

Beginning in October 2017, Mr. Kemp started going to chronic care visits with different medical providers at NCCF. Dkt. 101-2, para. 4. Over the next few years, he was prescribed low dose aspirin for his history of TIAs and combinations of ibuprofen, naproxen, Mobic, Cymbalta, Toradol, and Prednisone for back pain. Dkt. 101-2, paras. 4; dkt. 101-3, p. 11.

Dr. Platz treated Mr. Kemp only once, on January 22, 2018. 105-2, para. 4. During this appointment, Mr. Kemp was relaxed and moving briskly, and Dr. Platz did not believe he was in pain. *Id.* at para. 7. Dr. Platz believed that treatment for spinal stenosis, if necessary, should be provided by a neurologist. *Id.* However, based on his observations during this visit, Dr. Platz did not believe that Mr. Kemp required a neurological referral. *Id.*

Mr. Kemp asked Dr. Platz to order a bottom bunk pass based on his history of spinal stenosis and TIAs. *Id.* at para. 5. Dr. Platz was told that Mr. Kemp did not meet the criteria for a bottom bunk pass and, consequently, he did not order one. *Id.* at para. 6; dkt. 101-2, p. 11. Dr. Platz was not responsible for creating those criteria. Dkt. 105-2, para. 6.

On May 7, 2018, a different healthcare provider ordered a bottom bunk pass for Mr. Kemp based on his history of TIAs. Dkt. 101-2, pp. 2, 15.

Dr. Ippel first saw Mr. Kemp on June 5, 2018, for a chronic care visit. Dkt. 101-2, para. 5. During that visit, Mr. Kemp complained of neck pain and told Dr. Ippel that he received a magnetic

4

resonance image ("MRI") prior to his incarceration that showed a degree of spinal stenosis with degenerative joint disease. *Id.* Based on this information, Dr. Ippel referred Mr. Kemp to a physical therapist and indicated that he could receive a Toradol shot if necessary. *Id.*

Mr. Kemp attended a session with a physical therapist on June 18, 2018. *Id.* at para. 6. Dr. Ippel reviewed the physical therapist's notes, which indicated that Mr. Kemp's grip strength was grossly within normal limits with a good range of motion. *Id.* The physical therapist provided Mr. Kemp with a home exercise routine. *Id.* at 6.

Mr. Kemp attended a second session with a physical therapist on July 10, 2018. *Id.* at 7. Dr. Ippel reviewed the physical therapist's notes, which indicated that Mr. Kemp found the exercises beneficial. *Id.* His pain had improved, and he was able to walk to the recreational facility and lift weights. *Id.* The notes further indicated that Mr. Kemp felt comfortable following the home exercise plan on his own, and no additional physical therapy was scheduled. *Id.*

Dr. Ippel saw Mr. Kemp for the second and final time on July 17, 2018, to discuss his history of TIAs. *Id.* at para. 8. Dr. Ippel believed that the TIAs were caused by an underlying neurological condition and that maintenance medications beyond aspirin were not appropriate. *Id.* Following this visit, Dr. Ippel ordered a prescription for low dose Prednisone for six months. *Id.* Mr. Kemp continued to have a prescription for low dose aspirin as a preventative measure against future blood clots, as well as Celexa as prescribed by the mental health staff. *Id.*

Dr. Ippel declined to prescribe Neurontin for pain management because that medication is potentially habit-forming and is often trafficked in correctional settings. *Id.* at para. 10. Given that Mr. Kemp's discomfort was minimal and did not appear to significantly impact his daily activities, Dr. Ippel believed the most appropriate medication was low dose pain medication, such as aspirin, ibuprofen, and naproxen. *Id.*

Dr. Ippel was not aware that Mr. Kemp was deprived over-the-counter medications for a period of 50 days. *Id.* at para. 12. As a physician, Dr. Ippel prescribes and recommends medications, but he does not fill those prescriptions or dispense medications to inmates. *Id.* at 13. He relies on the nursing staff to dispense medication consistent with his orders. *Id.*

Dr. Ippel reviewed Mr. Kemp's records from Bluffton Regional Medical Center and does not believe that these records indicated a need for surgery. *Id.* at para. 9. Based on Dr. Ippel's review of Mr. Kemp's IDOC medical records, he does not believe that any other healthcare professionals have observed severe pain that significantly interfered with his daily activities or required extensive medical treatment. *Id.* at para. 14.

Between October 2017 and December 2017, Nurse Wadleigh saw and treated Mr. Kemp on several occasions for suicide monitoring. Dkt. 101-1, paras. 3-4. She prescribed Mr. Kemp Celexa due to his depression and anxiety. *Id.* at para. 4. She did not treat Mr. Kemp for other medical needs, such as spinal stenosis or TIAs. *Id.* She directed Mr. Kemp to submit Request for Healthcare forms if he had medical complaints that were unrelated to mental health. *Id.* at para. 5.

Nurse Wadleigh saw Mr. Kemp again on March 1, 2018, for medication management. *Id.* at para. 5. During this visit, Mr. Kemp told her that he wanted his medical records from Bluffton Clinic copied and given to his physicians at NCCF. *Id.* Ms. Wadleigh completed the request for these records, but she did not copy or review these records at any time. *Id.*

Mr. Kemp testified at his deposition that none of the pain medications listed above improved his condition. Dkt. 101-3, p. 12. He also testified that, "I'm taking [these medications] because I don't want somebody to say, hey, he's not trying to do what he's supposed to try to do here. I'm taking the medications that are prescribed for me but they're not working." *Id.* at 13. Lifting weights provides temporary relief, but the pain usually returns about an hour later. *Id.* at 4.

The evidence does not establish the specific time period that Mr. Kemp was allegedly deprived over-the-counter medications. At some point, he raised this issue to Nurse Wadleigh, who provided him with a slip to take to the pharmacy. *Id.* at 8 Mr. Kemp testified that Nurse Wadleigh promised to email the pharmacy regarding this deprivation, but he does not know whether she followed through on this promise. *Id.* He also testified that he submitted Request for Healthcare forms relating to this deprivation, but there is no evidence that Dr. Platz or Dr. Kemp was aware of these written requests. *Id.* at 8-9.

## III.
## DISCUSSION

### A. Deliberate Indifference Standard

Mr. Kemp asserts Eighth Amendment medical care claims against the defendants. At all times relevant to his claims, he was a convicted offender. Accordingly, his medical treatment is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc). "[C]onduct is deliberately indifferent when the

7

official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotations omitted). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Plummer v. Wexford Health Sources, Inc.*, 609 F. App'x 861, 862 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal quotation omitted). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

### B. Claims against the Defendants

#### 1. Dr. Platz

Mr. Kemp argues that Dr. Platz was deliberately indifferent to his medical needs because he did not prescribe a stronger pain medication such as Neurontin, did not order a bottom bunk pass, and did not refer him for surgery.

Dr. Platz did not ignore Mr. Kemp or refuse to treat him. Based on his observations during their one and only appointment, Dr. Platz did not believe that Mr. Kemp's level of pain was

significantly impacting his daily activities. As such, he did not believe a referral to a neurologist or stronger pain medication was necessary to treat his condition. The fact that another physician might disagree with Dr. Platz's assessment is not enough to establish deliberate indifference. *See Lockett v. Bonson*, 937 F.3d 1016, 1024-25 (7th Cir. 2019) (affirming summary judgment in favor of nurse practitioner who discontinued prisoner's prescription for a strong opioid painkiller in favor of a weaker painkiller to treat pain associated with sickle cell anemia). Dr. Platz denied Mr. Kemp a bottom bunk pass because he was told that Mr. Kemp did not meet the criteria for one, and there is no evidence that Dr. Platz had the authority to disregard these criteria. *See Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2014) (physician was not deliberately indifferent for following a prison policy he had no authority to ignore). Mr. Kemp has failed to establish a genuine dispute of material fact from which a reasonable jury could conclude that Dr. Platz was deliberately indifferent to his serious medical needs, and Dr. Platz's motion for summary judgment is **granted**.

2. Dr. Ippel and Nurse Wadleigh

Mr. Kemp argues that Dr. Platz was deliberately indifferent to his medical needs because he did not prescribe a stronger pain medication such as Neurontin and did not refer him for surgery. He also argues that Dr. Ippel and Nurse Wadleigh did not remedy the alleged deprivation of his over-the-counter pain medication.

Dr. Ippel's decision to deny Mr. Kemp's request for stronger medication was based on his professional judgment. He specifically believed that the risks of prescribing a habit-forming medication like Neurontin outweighed the potential benefits given the level of Mr. Kemp's pain. *See Pyles*, 771 F.3d at 412. He similarly did not believe that the severity of Mr. Kemp's condition warranted a surgical consultation. Although Mr. Kemp claims that the physical therapy Dr. Ippel

9

ordered was ineffective, Dr. Ippel believed, based on the physical therapist's notes, that the physical therapy was helping to relieve Mr. Kemp's pain and discomfort.

Dr. Ippel was not responsible for dispensing medications directly to his patients, and he was not aware that Mr. Kemp was being denied medication. Furthermore, Mr. Kemp testified that these pain medications did not provide him with any benefit, and that he was only taking them was to show that he was following directions. As such, he did not suffer any harm from this temporary deprivation, and the deprivation cannot form the basis of an Eighth Amendment violation.

The same holds true for Nurse Wadleigh. She provided Mr. Kemp with adequate mental health services and provided him with paperwork to request medications from the pharmacy. There is no evidence that she had the authority to take medication from the pharmacy and provide it directly to Mr. Kemp. Even if she had, Mr. Kemp testified this medication would not have provided him with any benefit.

Although Mr. Kemp states that Nurse Wadleigh failed to follow through on her promise to email the pharmacy on his behalf, *see* dkt. 111, p. 3, in his deposition Mr. Kemp testified that he did not know whether she had emailed the pharmacy or not. Dkt. 101-3, p. 8. *See James v. Hale*, 959 F.3d 307 307, 315 (7th Cir. 2020) (at summary judgment stage, district court may disregard a party's affidavit or verified motion that contradicts the party's deposition testimony).

Accordingly, the motion for summary judgment is **granted** in favor of Dr. Ippel and Nurse Wadleigh.

3. Wexford

There is no evidence that Mr. Kemp was denied over-the-counter medication for 50 days as a result of a Wexford policy or custom. *See Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014) (Private corporation which contracts to provide essential government

10

services cannot be held liable under § 1983 unless a constitutional violation was caused by an unconstitutional policy or custom of the corporation itself.). A plaintiff proceeding on an unlawful corporate custom claim must show numerous and widespread instances of constitutional violations. *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (holding that 4 incidents over approximately 11 months involving only the plaintiff was insufficient to show a widespread practice or custom).

Mr. Kemp has not presented a written Wexford policy on this topic, nor has he presented evidence that any prisoner besides himself was denied over-the-counter medication. *See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020) (prisoner failed to establish that Wexford had a practice of delaying prescriptions; the evidence failed to show that the incidents of delayed prescriptions were widespread, as they only involved the plaintiff, or that the incidents were sufficiently numerous, as there were only three instances of delays). Accordingly, the motion for summary judgment is **granted** in favor of Wexford.

## IV.
## CONCLUSION

For the reasons explained above, the defendants' motions for summary judgment, dkts. [99] and [104], are **granted**. Because this matter will not proceed to trial, Mr. Kemp's motion in limine, dkt. [107], is **denied as moot**. Judgment consistent with this Entry shall now issue.

**SO ORDERED**.

Date: 9/29/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KURT J. KEMP
266745
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeremy Michael Dilts
CARSON LLP
dilts@carsonllp.com

Angela Marie Rinehart
KATZ  KORIN CUNNINGHAM, P.C.
arinehart@kkclegal.com